UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

KENYA McNEILL,

                      Plaintiff,              6:15-CV-1473
                                                      (GTS/TWD)

v.

RAYMOUR & FLANIGAN FURNITURE,

                      Defendant.
_____

APPEARANCES:                                                 OF COUNSEL:

KENYA McNEILL
  Plaintiff, *Pro Se*
147 Main Street, 2nd Floor
Whitesboro, New York 13492

LITTLER MENDELSON, P.C.                       PAMELA S.C. REYNOLDS, ESQ.
  Counsel for Defendant
375 Woodcliff Drive, 2nd Floor
Fairport, New York 14450

GLENN T. SUDDABY, Chief United States District Judge

## **DECISION and ORDER**

      Currently before the Court, in this *pro se* employment discrimination action filed by Kenya McNeill ("Plaintiff") against Raymour & Flanigan Furniture ("Defendant") is Defendant's motion, pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, to compel arbitration and either dismiss the Complaint without prejudice or stay the action pending completion of arbitration. (Dkt. No. 9.) For the reasons set forth below, Defendant's motion is granted and the action is stayed pending the completion of arbitration.

**I.      RELEVANT BACKGROUND**

   **A.      Plaintiff's Complaint**

Generally, liberally construed, Plaintiff's Complaint[1] alleges that, on April 23rd of an unspecified year, Kelly Curtis (who is not further identified) referred to Plaintiff "as being a dog" by "slapping [his or her] leg" and saying, "good boy." (Dkt. No. 1 at ¶ 8 [Plf.'s Compl.].) Moreover, Plaintiff alleges that Jim Maxon and Dorothy Wessindine (who are also not further identified) stated an unspecified "racial slur," and that Maxon subjected Plaintiff to "constant harassment," including "yelling at" him. (*Id.*) Plaintiff alleges that he informed members of management and human resources of the "mistreatment" and "overall atmosphere in the store toward" him. (*Id.*)

Based upon the foregoing, Plaintiff asserts a claim of retaliation on the basis of his race, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*[2] (Dkt. No. 1.)

   **B.      Parties' Briefing on Defendant's Motion to Compel Arbitration**

      **1.      Defendant's Memorandum of Law**

Generally, in support of its motion to compel arbitration, Defendant[3] argues as follows: (1) Plaintiff entered into a valid arbitration agreement in March 2014 when he signed an "Associate's Agreement & Consent," in which he acknowledged that he had received a copy of

---

[1] Plaintiff's Complaint is handwritten on the District's five-page Title VII form complaint for employment discrimination actions. (Dkt. No. 1.)

[2] In other words, Plaintiff checked off the item of the form complaint that denotes that the conduct complained of constitutes retaliation. (Dkt. No. 1 at ¶ 7.) Liberally construing Plaintiff's sparse factual allegations, however, the Court finds that Plaintiff also appears to assert facts suggesting a claim of discrimination based upon race.

[3] Defendant advises that its correct corporate name is Raymours Furniture Company, Inc. (Dkt. No. 9, Attach. 1, at 1 n.1.) <u>The Clerk of the Court is respectfully directed to amend the caption accordingly.</u>

Defendant's Employment Arbitration Program ("EAP") terms and that he agreed to them (Dkt. No. 9, Attach. 1, at 5-6 [Def.'s Memo. of Law]); (2) Plaintiff's claims fall within the scope of Defendant's EAP, which expressly includes claims for discrimination and retaliation under Title VII and the Civil Rights Acts of 1866 and 1991 (*id.* at 6-7); (3) Title VII claims are arbitrable as a matter of law (*id.* at 7-8); and (4) the Court should dismiss Plaintiff's Complaint without prejudice or, in the alternative, stay the action pending arbitration (*id.* at 8-10).

In support of its motion, Defendant has filed a declaration sworn to by Stephen McPeak. (Dkt. No. 9, Attach. 2 [McPeak Decl.].) McPeak asserts, in part, as follows: (1) he is Defendant's vice president of human resources (*id.* at ¶ 1); (2) Defendant has adopted an employment arbitration program that covers, among other things, claims or disputes related to legally protected rights under Title VII and the Civil Rights Acts of 1866 and 1991 (*id.* at ¶¶ 6-9); (3) Plaintiff agreed to the terms of Defendant's arbitration program when he signed an "Associate's Agreement & Consent" on March 13, 2014 (*id.* at ¶ 10); and (4) in another case filed against Defendant, the United States District Court for the Southern District of New York granted a motion to compel arbitration based on a substantially similar arbitration program (*id.* at ¶ 11 [citing *Patterson v. Raymours Furniture Co., Inc.*, 96 F. Supp. 3d 71, 75 [S.D.N.Y. 2015], *aff'd*, 2016 WL 4598542, at *3 [2d Cir. Sept. 26, 2016]). Moreover, Defendant has also filed copies of the EAP terms and the March 2014 Associate's Agreement & Consent purportedly signed by Plaintiff. (Dkt. No. 9, Attach. 3.)

The Associate's Agreement & Consent provides, in part, as follows:

By signing below, I agree as follows:

1. I have received a copy of Raymour & Flanigan's Employment Arbitration Program Terms ("Program"), which was attached to this Agreement form or has been given to me separately and is incorporated in its entirety herein by reference. I had a full and fair opportunity to review the Program and to understand its terms before signing below. . . .

2. I agree to all terms of the Program, which is a contract that I am entering into with [Raymour and Flanigan], governing how disputes regarding my employment . . . are to be resolved. . . .

3. Hereby and under the Program, I agree to arbitrate all Claims against R&F regarding my employment under the terms of and within the deadline set forth in the Program. . . . I understand that if I attempt to assert any Claims against R&F by means other than arbitration [as] described in the Program, R&F will have the unqualified right to require me to arbitrate such Claims in accordance with the Program.

. . .

7. The term "Claims" as used herein has the meaning defined in the Program and includes employment and compensation-related claims, disputes, controversies or allegations that I have against R&F . . . based on legally protected rights. . . . Examples include but are not limited to Claims alleging discrimination, harassment, retaliation or failure to pay wages under such laws as Title VII of the Civil Rights Act . . . .

(*Id.* at 11-12 [pagination generated by CM/ECF, the Court's electronic filing system].) At the end of the Associate's Agreement & Consent, Plaintiff's name is typewritten, signed (illegibly), and dated (in handwriting) March 13, 2014.[4] (*Id.* at 12.)

---

[4] The EAP terms also specified that claims pursuant to, among other things, Title VII and the Civil Rights Acts of 1866 and 1991, were subject to arbitration. (Dkt. No. 9, Attach. 3, at 3 [defining "legally-protected right"].)

### 2. Plaintiff's Opposition Memorandum of Law

Generally, liberally construed, Plaintiff's opposition to Defendant's motion to compel arbitration argues as follows: (1) the signature on the March 2014 Associate's Agreement & Consent proffered by Defendant is not his signature, and he has "never agreed" to submit claims to arbitration; and (2) the EAP is unconscionable because it "immunizes Raymour & Flanigan from liability." (Dkt. No. 10 at 1-2 [Plf.'s Opp'n Memo. of Law].) In support of his argument, Plaintiff also filed other documents (unrelated to any agreement to arbitrate), purportedly signed by Plaintiff, to demonstrate the difference between those signatures and the signature on the Associate's Agreement & Consent adduced by Defendant. (Dkt. No. 10 at 3-7.)

### 3. Defendant's Reply Memorandum of Law

Generally, in its reply, Defendant argues as follows: (1) Plaintiff signed the March 2014 Associate's Agreement & Consent adduced with its initial motion papers (Dkt. No. 12 at 1 [Def.'s Reply Memo. of Law]); (2) even if Plaintiff did not sign the March 2014 Associate's Agreement & Consent, he agreed to arbitrate his claims in December 2013, when, as part of Defendant's computer-based job application process, he electronically acknowledged reading (among other things) Defendant's March 2013 "Associate Handbook" (*id.* at 1-5); and (3) Defendant's EAP is fair, easy to understand, and, by its terms, affords Plaintiff the same relief that he could seek and obtain in court (*id.* at 6-8).

In support of its reply, Defendant has also adduced a reply declaration from McPeak (Dkt. No. 12, Attach. 1), attached to which are a copy of Defendant's Associate Handbook (Dkt. No. 12, Attach. 2), and a "Receipt and Acknowledgment of Raymour & Flanigan Associate Handbook, Employment Arbitration Program and Acknowledgment of At-Will-Employment

Status," reflecting that Plaintiff electronically acknowledged that he read those documents and accepted their terms on December 17, 2013 (Dkt. No. 12, Attach. 3).

In his reply declaration, McPeak asserts, among other things, as follows: (1) in December 2013, Plaintiff applied for employment with Defendant through a computer program called Virtual Edge (Dkt. No. 12, Attach. 1, at ¶ 3); (2) Plaintiff created a Virtual Edge account in order to apply for employment (*id.*); (3) after he was offered employment, Plaintiff was required to complete (and did complete) various "onboarding tasks," one of which was to review and acknowledge Defendant's Associate Handbook within the Virtual Edge program (*id.* at ¶¶ 3-4); (4) in the Virtual Edge program, applicants "were able to see, scroll through, and . . . print a full copy of the Associate Handbook, including the Arbitration Program" (*id.* at ¶ 5); (5) after "accessing and reviewing" the Associate Handbook, applicants–including Plaintiff–certified that they had read each policy by "checking a box marked, 'I certify I have read the policy above' and then clicking a button marked 'Done,'" and Virtual Edge recorded the time and date of the acknowledgment (*id.*); (6) Plaintiff "acknowledged his access, receipt, and review of the March 2013 Associate Handbook in Virtual Edge on December 17, 2013 at 5:38 p.m." (*id.* at ¶ 6); and (7) the EAP in place in December 2013 (i.e., the EAP set forth in the March 2013 Associate Handbook) is "virtually the same" as the EAP provided to employees in 2014, and is the same as the EAP at issue in *Patterson*, 96 F. Supp. 3d at 71 (*id.* at ¶ 8).

In pertinent part, the March 2013 Associate Handbook states that, as a condition of employment, all employees were required to arbitrate any "claims" based upon a "legally protected right." (Dkt. No. 12, Attach. 2, at 58-59.) The March 2013 Associate Handbook expressly defines "legally protected right" as including, among other things, any right guaranteed by Title VII and/or the Civil Rights Acts of 1866 and 1991. (*Id.* at 59.) Moreover, the

December 2013 "Receipt and Acknowledgment" (which appears to be a computer printout) bears Plaintiff's name under the heading "New Hire." (Dkt. No. 12, Attach. 3.) The December 2013 "Receipt and Acknowledgment" form also provides, in part, as follows:

> I understand that the Associate Handbook . . . contain[s] important information about Raymour & Flanigan's employment policies, including [its] Employment Arbitration Program ("the Program") which applies to all disputes (as described in the Program) between me and Raymour & Flanigan. I also understand that . . . the Handbook policies and Program apply to me effective immediately and that the policies and Program are essential conditions of my continued employment. . . .
>
> I also acknowledge that I was given a sufficient amount of time to read and to understand this form before I signed it. . . .
>
> To the above
> I agree
>
> Signature
> By using a key pad, mouse, or other device to select the "I Agree" button above, I hereby represent that I am affixing my electronic signature to the Receipt and Acknowledgment form, that I agree to the understandings and acknowledgments set forth above and that my electronic signature is the legally binding equivalent to my handwritten signature. . . .
> kenya mcneill

(*Id.*) The document also contains the text, "Click Here to View Raymour & Flanigan's Associate Handbook." (Dkt. No. 12, Attach. 3.)

## II. GOVERNING LEGAL STANDARD

Defendant's motion to compel arbitration is made under the FAA, which requires federal courts to enforce arbitration agreements and stay any litigation that contravenes such agreements. 9 U.S.C. §§ 2 and 3; *McMahan Sec. Co. v. Forum Capital Markets L.P.*, 35 F.3d 82, 85-86 (2d Cir. 1994). The FAA does not require parties to arbitrate, however, "when they

-7-

have not agreed to do so." *McMahan Sec. Co.*, 35 F.3d at 86 (quoting *Volt Info. Sci. Inc. v. Bd. of Tr.*, 489 U.S. 468, 478 [1989]).

The FAA is an expression of "a strong federal policy favoring arbitration as an alternative means of dispute resolution." *Hartford Accident & Indem. Co. v. Swiss Reinsurance Am. Corp.*, 246 F.3d 219, 226 (2d Cir. 2001). In fact, the Second Circuit has said that "it is difficult to overstate the strong federal policy in favor of arbitration, and it is a policy we have often and emphatically applied." *Arciniaga v. Gen. Motors Corp.*, 460 F.3d 231, 234 (2d Cir. 2006) (citation and internal quotation marks omitted).

However, "emphatic application does not amount to automatic application." *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 121 (2d Cir. 2010). This is because the FAA provides that an arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Accordingly, "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements[.]" *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). "As a result, prior to compelling arbitration, the district court must first determine two threshold issues that are governed by state rather than federal law: (1) [d]id the parties enter into a contractually valid arbitration agreement[;] and (2) [i]f so, does the parties' dispute fall within the scope of the arbitration agreement?" *Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel*, 346 F.3d 360, 365 (2d Cir. 2003).

In the context of motions to compel arbitration pursuant to the FAA, "the court applies a standard similar to that applicable for a motion for summary judgment." *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003). "If there is an issue of fact as to the making of the

agreement for arbitration, then a trial is necessary." *Bensadoun*, 316 F.3d at 175 (citing 9 U.S.C. § 4).  However, "[i]f the party seeking arbitration has substantiated the entitlement by a showing of evidentiary facts, the party opposing may not rest on a denial but must submit evidentiary facts showing that there is a dispute of fact to be tried."  *Oppenheimer & Co., Inc. v Neidhardt*, 56 F.3d 352, 358 (2d Cir. 1995) (citing *Manning v. Energy Conversion Devices, Inc.*, 833 F.2d 1096, 1103 [2d Cir. 1987] ["A party resisting arbitration on the ground that no agreement to arbitrate exists must submit sufficient evidentiary facts in support of this claim in order to precipitate the trial contemplated by 9 U.S.C. § 4."]).

## III. ANALYSIS

### A. Whether Defendant's Motion to Compel Arbitration Should Be Granted

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendant's memoranda of law.  (Dkt. No. 9, Attach. 1 [Def.'s Memo. of Law]; Dkt. No. 12 [Def.'s Reply Memo. of Law].)   To those reasons, the Court adds the following analysis, which is intended to supplement Defendant's reasons and not to supplant them.

In its motion, Defendant substantiated its entitlement to compel arbitration by filing McPeak's declaration and copies of the terms of Defendant's EAP and March 2014 Associate's Agreement & Consent, which, McPeak asserts, was signed by Plaintiff on March 13, 2014. (Dkt. No. 9, Attach. 2 [McPeak Decl.]; Dkt. No. 9, Attach. 3, at 11-12 [Associate's Agreement & Consent].)  Both the EAP and the 2014 Associate's Agreement & Consent unequivocally state that employment-related discrimination and retaliation claims, including those brought under Title VII, are included within the scope of the EAP's terms.  (Dkt. No. 9, Attach. 3, at 2-3, 11-12.)

In opposition, Plaintiff argued that the signature on the Associate's Agreement & Consent was not his signature and that he never agreed to arbitrate any claims against Defendant. (Dkt. No. 10 at 1-2 [Plf.'s Opp'n Memo. of Law].) However, Plaintiff failed to file an affidavit or declaration substantiating his factual assertions in admissible form. The Court notes that Plaintiff was provided, in person, with copies of the District's Local Rules of Practice and Pro Se Handbook. (Dkt. No. 4 [Plf.'s Acknowledgment of Receipt].)

In its reply, Defendant reiterated that Plaintiff signed the March 2014 Associate's Agreement & Consent. Moreover, Defendant (again) substantiated its entitlement to compel arbitration, but in a different manner. Specifically, McPeak asserted in a reply declaration (to which he attached supporting documentary evidence) that Plaintiff agreed to arbitrate Title VII claims in December 2013, when he electronically acknowledged reading, understanding, and agreeing to the terms of the March 2013 EAP as part of the hiring process.[5] (Dkt. No. 12, Attach. 1, at ¶¶ 3-8 [McPeak Reply Decl.].)

On October 7, 2016, the Court issued a Text Order, *sua sponte* granting Plaintiff permission to file a sur-reply within 14 days. (Text Order filed 10/7/2016.) The Court found it appropriate to grant this permission for two reasons. First, Defendant submitted new evidence in its reply papers (i.e., that Plaintiff had consented to arbitrate his claims on an occasion in addition to that relied upon in support of its motion), to which Plaintiff could not have otherwise

---

[5] The Court notes that "the FAA does not require a signed writing, but only a writing, and, '[u]nder New York law, the conduct of the parties may lead to the inference of a binding agreement.'" *Patterson*, 96 F. Supp. 3d at 76 (quoting *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 582 [2d Cir. 2006]) (internal citations omitted). Moreover, "[a]n employee may consent to a modification to the terms of employment by continuing to work after receiving notice of the modification." *Manigault v. Macy's East, LLC*, 318 F. App'x 6, 8 (2d Cir. 2009) (summary order) (citing, *inter alia*, *Bottini v. Lewis & Judge Co.*, 211 A.D.2d 1006 [N.Y. App. Div. 3d Dep't 1995]).

responded. Second, mindful of Plaintiff's status as a *pro se* civil rights litigant, the Court found that it was appropriate to remind Plaintiff that he must adduce admissible evidence that the signature on the document filed by Defendant was not his signature and that he did not electronically execute the December 2013 Receipt and Acknowledgment referenced in Defendant's reply (e.g., by an affidavit and/or declaration pursuant to 28 U.S.C. § 1746).

District courts have discretion to consider arguments and evidence raised in a moving party's reply papers. *Ruggiero v. Warner-Lambert Co.*, 424 F.3d 249, 252 (2d Cir. 2005); *accord*, *Compania Del Bajo Caroni Caroni (Caromin), C.A. v. Bolivarian Republic of Venezuela*, 341 F. App'x 722, 724 (2d Cir. 2009) (summary order) ("A district court enjoys broad discretion (1) to consider arguments made for the first time in a reply brief [and] (2) to rely on evidence submitted with the reply papers[.]") (internal citations and quotation marks omitted); *Gilmore v. Bouboulis*, 15-CV-0686, 2016 WL 4532146, at *18 (N.D.N.Y. Aug. 29, 2016) (Suddaby, C.J.). Under the circumstances of this case, the Court finds it appropriate to exercise that discretion. Plaintiff was afforded an opportunity to file a sur-reply, the specific purposes of which were to allow him to properly respond to the arguments presented in Defendant's initial motion papers as well as its reply. Plaintiff failed to avail himself of that opportunity.

In light of Defendant's initial motion papers as well its reply papers, the Court concludes that Defendant established that an agreement to arbitrate the claims at issue existed on two different factual bases (i.e., that Plaintiff knowingly agreed to arbitrate, among other things, Title VII claims against Defendant in December 2013 and that he did so again in March 2014). *See Patterson*, 96 F. Supp. 3d at 76 (concluding that "there is an agreement to arbitrate because the Plaintiff acknowledged that she had read and reviewed the 2013 version of Defendant's

Handbook, containing the EAP," and collecting cases); *Litvinov v. UnitedHealth Grp. Inc.*, 13-CV-8541, 2014 WL 1054394, at *3 (S.D.N.Y. Mar. 11, 2014) ("[D]efendant has put forth an exhibit that indicates Lewis electronically acknowledged that she received and reviewed the Arbitration Policy on December 17, 2012 at noon and again at 1:59 p.m."). In opposition, Plaintiff failed to submit sufficient, admissible evidentiary facts in support of his argument that he did not sign the Associate's Agreement & Consent in March 2014. Thereafter, Plaintiff failed to file a sur-reply in response to Defendant's assertions concerning his agreements to arbitrate in both December 2013 and March 2014. *See Harrington v. Atl. Sounding Co., Inc.*, 602 F.3d 113, 124 (2d Cir. 2010) ("A party to an arbitration agreement seeking to avoid arbitration generally bears the burden of showing the agreement to be inapplicable or invalid."). Accordingly, Plaintiff has failed to demonstrate that there is a dispute of fact as to his agreement to arbitrate. Defendant's motion is therefore granted.

The Court would add only two points. First, Plaintiff does not argue that his claims are not arbitrable and, for the reasons stated in Defendant's memoranda of law, the Court concludes that Plaintiff's claims are arbitrable under the terms of both the 2013 EAP and the 2014 EAP.[6] (Dkt. No. 9, Attach. 1, at 6-7 [Def.'s Memo. of Law]; Dkt. No. 12 at 2-5 [Def.'s Reply Memo. of Law].) Second, the Court concludes that, for the reasons stated in Defendant's reply memorandum of law, neither of the EAPs at issue is unconscionable or improperly shields

---

[6] Plaintiff also does not dispute that his claims are arbitrable as a matter of law, and the Court concludes that they are. "Congress specifically approved arbitration of Title VII claims in the Civil Rights Act of 1991, expressly stating that the 'use of alternative means of dispute resolution, including . . . arbitration, is encouraged to resolve disputes arising under the Acts or provisions of Federal law amended by this title.'" *Parisi v. Goldman, Sachs & Co.*, 710 F.3d 483, 487 (2d Cir. 2013) (quoting Civil Rights Act of 1991, Pub. L. No. 102–166, § 118, 105 Stat. 1071 [1991]).

Defendant from liability.[7]  (Dkt. No. 12 at 6-8.)  As Defendant notes, both EAPs state that the arbitrator adjudicating a claim may award all of the relief that a court of law could award.  (Dkt. No. 9, Attach. 3, at 8 [pagination generated by CM/ECF]; Dkt. No. 12, Attach. 2, at 68 [pagination generated by CM/ECF].)

      **B.**      **Whether This Action Should Be Stayed Pending the Outcome of Arbitration**

After carefully considering the matter, the Court answers this question in the affirmative for the reasons that follow.

A stay is not mandatory in this case because Plaintiff has not requested one, and Defendant requests dismissal in the first instance.  *See Katz v. Pellco P'ship*, 794 F.3d 341, 345 (2d Cir. 2015) ("We join those Circuits that consider a stay of proceedings necessary after all claims have been referred to arbitration *and a stay requested*.") (emphasis added) (citing 9 U.S.C. § 3); *Benzemann v. Citibank N.A.*, 622 F. App'x 16, 18 (2d Cir. 2015) (summary order) (noting that plaintiff "did not request a stay before the district court entered judgment" and that dismissal was therefore proper).  However, the Court finds that a stay is appropriate under the circumstances of this case and in light of Plaintiff's *pro se* status.  "A stay enables parties to

---

      [7]      "Under New York law, a contract is unconscionable when it is 'so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be unenforceable according to its literal terms.'"  *Nayal v. HIP Network Servs. IPA, Inc.*, 620 F. Supp. 2d 566, 571 (S.D.N.Y. 2009) (quoting *Gillman v. Chase Manhattan Bank*, N.A. 73 N.Y.2d 1, 10 [1988]); *accord, Ragone*, 595 F.3d at 121.  "Generally, there must be a showing that such a contract is both procedurally and substantially unconscionable.  The procedural element of unconscionability concerns the contract formation process and the alleged lack of meaningful choice; the substantive element looks to the content of the contract[, per se]."  *Ragone*, 595 F.3d at 121-22 (citations and internal quotation marks omitted).  Plaintiff has failed to point to any facts supporting the conclusion that the EAPs at issue are procedurally or substantively unconscionable, and has not identified any term of either EAP that is purportedly unfair.

proceed to arbitration directly, unencumbered by the uncertainty and expense of additional litigation, and generally precludes judicial interference until there is a final award." *Katz*, 794 F.3d at 346 (footnote omitted); *accord, e.g., Hamzaraj v. ABM Janitorial Northeast Inc.*, 15-CV-2030, 2016 WL 3571387, at *5 (S.D.N.Y. June 27, 2016) (staying *pro se* civil rights plaintiff's case involving discrimination claims pending arbitration, despite defendant's request to dismiss case); *75-07 Food Corp. v. Tr. of United Food & Commercial Workers Local 342 Health Care Fund*, 13-CV-5861, 2014 WL 691653, at *14 (E.D.N.Y. Feb. 24, 2014) ("Here, although the Union Funds request dismissal, the Court believes that the more appropriate action is to stay the proceedings and to compel arbitration in order to promote expeditious resolution of this dispute.") (citations and internal quotation marks omitted).

For the foregoing reasons, this matter is stayed pending the outcome of arbitration.

**ACCORDINGLY**, it is

**ORDERED** that Defendant's motion to compel Plaintiff to arbitrate his claims (Dkt. No. 9) is **GRANTED;** and it is further

**ORDERED** that the action is **STAYED** pending the completion of arbitration, and that arbitration must be completed by June 5, 2017; and it is further

**ORDERED** that the Clerk of the Court shall amend the docket sheet in accordance with note 3 of this Decision and Order.

Dated: December 5, 2016
 Syracuse, New York

/s/ Glenn T. Suddaby
Hon. Glenn T. Suddaby
Chief U.S. District Judge